IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANDRE JONES, #09A4947, | ) Civil Action No. 3:09-2161-DCN-JRM |
| Plaintiff, | ) |
| vs. | ) |
| | )**REPORT AND RECOMMENDATION** |
| CAMDEN POLICE DEPARTMENT; AND E. R. COREY, | ) |
| Defendants, | ) |

Plaintiff filed this action on July 24, 2009 in the United States District Court, Eastern District of New York. The case was transferred to the District of South Carolina.[1] Defendants are the Camden Police Department ("CPD") and E. R. Corey, a Detective Sergeant for the CPD. Defendants filed a motion for summary judgment on December 21, 2009. Plaintiff, because he is proceeding pro se, was advised on December 23, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response and his own motion for summary judgment on January 19, 2010. Defendants filed a response opposing Plaintiff's motion for summary judgment on January 29, 2010, and Plaintiff filed a reply on February 16, 2010.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

**FACTS**

In April of 2007, Defendant Corey's supervisor informed him that the New York City Police Department's ("NYPD") 103rd Precinct was investigating Plaintiff in connection with a murder which occurred on March 24, 2007. Corey Aff., Para. 2. The NYPD officers arrived in Camden on April 20, 2007, and began investigating (with Corey) leads regarding Plaintiff's whereabouts. On April 21, 2007, the police officers received a tip that Plaintiff would be riding a bicycle near the police station with a white towel or t-shirt covering his head. NYPD Detective Lee Abrahall ("Abrahall") and Corey drove in Abrahall's rental car and located the described individual. Id., Paras. 3-4.

Plaintiff claims that an unmarked police car "came aside me and side swat me, causing me to fall off my bike." Plaintiff's Opp. Mem. at 1. He states that while he was getting up from the ground, a detective from the NYPD and Defendant Corey grabbed and handcuffed him and took him to the police station. Id. at 2. Defendants contend that they asked Plaintiff to stop so they could speak to him, but he refused to stop; the NYPD officer blocked the path of Plaintiff's bike with his car; Corey got out of the vehicle; Corey placed his hands on Plaintiff's bicycle to stop Plaintiff from traveling further; and Plaintiff got off his bicycle and stood beside the car. Corey Aff., Paras. 4-5. Corey states that officers asked Plaintiff to identify himself and Plaintiff refused, NYPD Detective Abrahall attempted to remove the white towel or t-shirt from the person's head to verify whether he was Andre Jones, and Plaintiff became combative. At that point, Plaintiff was taken to the ground and handcuffed, taken into custody, and transported to the CPD. Id., Para. 5

Corey states that Plaintiff was interviewed by the NYPD police officers, the NYPD officers told Corey that Plaintiff confessed to the murder of March 24, 2007, and Plaintiff agreed to willingly go back to New York the next day to face charges there. Corey Aff., Para. 8. After the interview and confession, Corey states that he observed the NYPD make telephone calls to New York authorities

to obtain a criminal complaint and arrest warrant for Plaintiff on the charge of murder in the second degree. After being informed that the warrant was issued and active, Corey accessed the National Crime Information Center ("NCIC") and independently verified the existence of the warrant. Id. Based on information from the NYPD officers regarding the arrest warrant, and information obtained from NCIC, Corey secured a warrant from South Carolina Magistrate Roderick Todd for Plaintiff's arrest on the charge of "Fugitive from Justice" under S.C. Code Ann. § 17-9-10. Plaintiff was transported to the Kershaw County Detention Center (KCDC"). A copy of the New York arrest warrant for murder was later faxed to the CPD and received by Corey. Corey Aff., Para. 9 and Ex. B (arrest warrant from the Criminal Court of the City of New York).

Plaintiff was detained at the KCDC until he was extradited to New York on July 31, 2007. On August 10, 2009, Plaintiff was convicted in New York on the charges of Manslaughter in the Second Degree and Criminal Possession of a Weapon in the Third Degree. He received a twenty-five year sentence as to those convictions. Corey Aff., Paras. 11-12.

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972) and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255(1986). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986). A party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. See Morrissey v. William Morrow & Co., 739 F.2d 962 (4th Cir. 1984), cert. denied 469 U.S. 1216 (1985); Foy v. Norfolk and W. Ry. Co., 377 F.2d 243 (4th Cir.), cert. denied, 389 U.S. 848 (1967); Bradford v. School Dist., 364 F.2d 185 (4th Cir. 1966); and Sturdivant v. Medical Eng'g Corp., 121 F.R.D. 51 (D.Md. 1988).

## **DISCUSSION**

In his complaint, Plaintiff alleges that he was falsely arrested by the CPD in Camden, South Carolina on April 21, 2007, and falsely imprisoned at the KCDC until July 31, 2007. He claims that he was arrested without a warrant because he was charged by Defendant Corey with being a fugitive from justice, but at the time of his arrest there was no such felony complaint or arrest warrant on file in New York. He claims that he was detained in South Carolina for five weeks before a warrant was issued in New York and was not brought before a judge in South Carolina until July 31, 2007 (when New York police were ready to transport him to New York). Plaintiff alleges claims for false imprisonment, false arrest, slander, and mental anguish. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to set forth a claim for municipal liability as to CPD; (2) Plaintiff fails to state a claim for illegal seizure and false imprisonment under 42 U.S.C. § 1983 ("1983"); (3) Defendants are entitled to qualified immunity; (4) Plaintiff's claims are barred, in whole

4

or in part, by the holding in Heck v. Humphrey and its progeny; (5) Plaintiff's state law claims are barred by the applicable statute of limitations; (6) Defendants are entitled to judgment as to Plaintiff's defamation cause of action because any statements made by Defendants were privileged; (7) Plaintiff fails to state a claim against Defendants for false arrest and imprisonment; and (8) Defendants are entitled to sovereign immunity as to Plaintiff's cause of action for intentional infliction of emotional distress. Plaintiff appears to argue that summary judgment should be granted in his favor based on the facts and exhibits he has presented.

### 1. Heck v. Humphrey

Defendants argue that Plaintiff's claims are barred because a civil ruling on the issue of a warrantless arrest could affect Plaintiff's current conviction by calling into question the probable cause for his arrest or the admissibility of evidence used against him in trial, such as his confession. The Supreme Court has held that in order to recover damages for imprisonment in violation of the United States Constitution, the imprisonment must first be successfully challenged. Heck v. Humphrey, 512 U.S. 477 (1994); see Edwards v. Balisock, 520 U.S. 641 (1997) (the preclusive rule of Heck extended to § 1983 claims challenging procedural deficiencies which necessarily imply the invalidity of the judgement). A favorable determination on the merits of Plaintiff's claims in this § 1983 action would require a finding that his imprisonment is invalid. The United States Supreme Court states that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. at 487.

Here, Plaintiff's allegations concern his arrest and detention for a crime for which he has been found guilty. Plaintiff has not shown that his conviction has been overturned or otherwise impugned. Thus, to the extent that Plaintiff is claiming there was insufficient probable cause to stop and detain him or that his arrest warrant was deficient, his claims are barred under Heck v. Humphrey, supra.

### 2. False Arrest/False Imprisonment

Plaintiff appears to allege that his constitutional rights were violated because he was falsely arrested and falsely imprisoned. Defendants contend that Plaintiff fails to state a claim for illegal seizure or false imprisonment under § 1983 because his arrest was made pursuant to a valid warrant, there was probable cause for a warrant, there was probable cause to stop and detain Plaintiff, and there was probable cause to arrest Plaintiff at the time of his initial detention.

Even if Plaintiff's claims for false arrest and false imprisonment are not barred by Heck, he fails to show that he was falsely arrested or falsely imprisoned. Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are analyzed as unreasonable seizures under the Fourth Amendment. See, e.g., Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)(recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001)(claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

#### (a) Arrest Made Pursuant to a Warrant

Plaintiff's arrest on the charge of Fugitive from Justice was made pursuant to a facially valid warrant. Under § 1983, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir.1998); Brooks v. City of Winston-Salem, 85 F.3d 178, 181-82 (4th Cir.1996) (when arresting

official makes the arrest with a facially valid warrant it is not false arrest). In <u>Baker v. McCollan</u>, 443 U.S. 137, 143-44 (1979), the United States Supreme Court determined that the issuance of a facially valid warrant by a magistrate satisfies the probable cause standard. An officer who makes an arrest pursuant to warrant is entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." <u>Malley v. Briggs</u>, 475 U.S. 335, 344-345 (1986).

Plaintiff appears to allege that this warrant was not facially valid because it was altered. His arguments appear to concern the redacting of pertinent information by Defendants. The information, however, appears to have been redacted pursuant to Rule 5.2 which requires privacy protection for filings made with the court including information concerning social-security numbers and birth dates. <u>See</u> Fed. R. Civ. P. 5.2. Additionally, there appear to be minor differences because the parties have provided one copy of the warrant that appears to be the one given to Plaintiff and another which is the audit copy. Defendants have submitted an affidavit from South Carolina Magistrate Roderick M. Todd, Jr. in which he states that he reviewed the applicable warrant, confirms that it accurately reflects his signature, and confirms that he signed the warrant for the arrest of Plaintiff on April 21, 2007. Todd Aff., Para. 3.

    (b)  <u>Probable Cause for Warrant</u>

There was probable cause to arrest Plaintiff on the charge of Fugitive from Justice under South Carolina Code Ann. § 17-9-10. Defendant Corey was informed by the NYPD officers that Plaintiff confessed regarding a pending murder investigation. <u>See</u> Corey Aff., Para. 8. He observed the NYPD officers contact the District Attorney in New York to obtain an arrest warrant. Corey then independently verified that the warrant was pending and in existence by requesting that dispatch perform a search of the NCIC through the South Carolina Law Enforcement Division. The

CPD later received a copy of the New York Criminal arrest warrant. See Corey Aff., Para. 9. Contrary to the argument in Plaintiff's complaint, there was a New York arrest warrant in place at the time of his arrest on the charge of Fugitive from Justice in South Carolina. Plaintiff appears to argue that the New York warrant contained errors concerning his birth date, social security number and name (because it contained a middle name and he has no middle name). These appear, however, to be mistakes are irrelevant to this action, as Plaintiff was the correct individual wanted on the charge in New York and was thereafter convicted of such charge.[2]

   (c)   Probable Cause for Stop and Detention

Plaintiff may be attempting to allege that he was arrested without a warrant at the time he was placed in handcuffs. Defendants contend that they had probable cause to stop and detain Plaintiff.

"A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts know to the officer at the time." Hayes v. Florida, 470 U.S. 811, 816 (1985), citing Adams v. Williams, 407 U.S. 143, 146 (1972). There was information from the NYPD officers that Plaintiff was a suspect in a murder investigation. See Corey Aff., Paras. 2-3. Further, Defendant Corey and the NYPD officers received a tip from a known informant that Plaintiff would be riding a bicycle in a particular area of town wearing a towel or shirt on his head. See Corey Aff., Para. 3. A tip from

---

[2]Further, to the extent that a mere technical error has been shown, such an error does not make the warrant invalid. See McLean v. Mallott, 10 F.3d 806 (4th Cir. 1993)(unpublished)(typographical error on arrest warrant did not render warrant invalid); United States v. Carter, 756 F.2d 310, 313 (3d Cir. 1985), cert. denied, 478 U.S. 1009 (1986). A mere technical error does not automatically invalidate the warrant. "The true inquiry ... is ... whether there has been such a variance as to 'affect the substantial rights' of the accused." Cromer v. United States, 142 F.2d 697 (D.C.Cir. 1944)(quoting Berger v. United States, 295 U.S. 78, 82 (1935))

a known informant may, by itself, be sufficient to establish reasonable suspicion for a vehicle stop. United States v. Singh, 363 F.3d 347 (4th Cir. 2004), citing United States v. Spotts, 275 F.3d 714, 720 (8th Cir. 2002).

        (d)     Probable Cause for Arrest - Initial Detention

A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances test. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists when the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Here, the facts and circumstances within Defendant Corey's knowledge were sufficient to warrant a prudent man in believing that Plaintiff had committed an offense. Corey had probable cause to arrest Plaintiff based on the information from the New York officers as to the crime committed in New York. The NYPD officers informed him that Plaintiff was a prime suspect in the pending murder investigation and that they believed Plaintiff had fled from New York to South Carolina. Probable cause can rest on the collective knowledge of the officers involved in an operation rather than solely on that of the officer who makes the arrest. United States v. Pitt, 382 F.2d 322, 324 (4th Cir.1967). Under the collective knowledge doctrine, law enforcement officers cooperating in an investigation are entitled to rely upon each other's knowledge of facts when forming the conclusion that a suspect has committed or is committing a crime. See United States v. Wells, 98 F.3d 808, 810 (4th Cir.1996) ("And, although the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon

9

was evidence of a crime at the time of the seizure."); see also United States v. Laughman, 618 F.2d 1067, 1072 (4th Cir.1980) ("[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts")

Additionally, although Plaintiff disputes some of the facts provided by Defendants, he does not appear to dispute that he initially did not stop when asked to do so by the police. He appears to argue that he did not know they were policemen because they were in an unmarked car, but Corey states that he was wearing a golf shirt issued by the CPD which had a large yellow badge embroidered on the shirt. Corey Aff., Para. 3. See United States v. Mitchell, 58 Fed.Appx. 14 (4th Cir. 2003), citing United States v. Martinez-Gonzalez, 686 F.2d 93, 100 (2d Cir.1982)(flight upon approach of police transforms reasonable suspicion into probable cause).

Probable cause may also be based on uncharged conduct. See, e.g., Devenpeck v. Alford, 543 U.S. 146, 154-56 (2004); Jackson v. City of Abbeville, 623 S.E.2d 656, 660 (S.C. Ct. App.2005). Here, Defendants assert that based on Plaintiff's actions in refusing to stop for the police, refusing to identify himself, and becoming combative with an officer, Plaintiff could have been arrested for disorderly conduct in violation of City of Camden Ordinance § 130.02 (which they state provides that "[a]ny person who shall resist or interfere with any member of the Police Department...in the discharge of his duties shall be guilty of a misdemeanor.") or the common law offense of "obstruction of justice" (which provides that it is unlawful for any individual to "do any act which prevents, obstructs, impedes, or hinders the administration of justice" see State v. Cogdell, 257 S.E.2d 748, 750 (S.C. 1979)). Plaintiff does not appear to dispute that he could have been arrested on these offenses, instead arguing that he was never actually arrested on such charges.

### 3. **Mental Anguish**

Plaintiff alleges a claim for mental anguish. To the extent that he is asserting a claim under § 1983 for emotional injuries as a result of his arrest and detention, his claim fails. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[3]

42 U.S.C. § 1997e(e).

### 4. **CPD - Municipal Liability**

CPD argues that Plaintiff's claims against it should be dismissed because he has not alleged any improper custom or policy of CPD which resulted in a violation of Plaintiff's constitutional rights. Municipal liability is based on execution of a governmental policy or custom. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). A municipality may not be held liable under § 1983 solely because it employs the tortfeasor; rather, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. Board of County Commissioners v. Brown, 520 U.S.

---

[3]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

11

397(1997). Plaintiff fails to identify a policy or custom of the CPD which caused his federal rights to be violated, thus he fails to state a claim against this Defendant.

### 5. **Qualified Immunity**

Defendant Corey contends that he is entitled to qualified immunity in his individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendant Corey is entitled to qualified immunity in his individual capacity.

### 6. State Law Claims

Plaintiff alleges a claim under South Carolina law for slander. He may also be attempting to assert a claim under South Carolina law for mental anguish, false arrest, and false imprisonment. Defendants contend that their motion for summary judgment should be granted as to this claim because Plaintiff fails to show that a defamatory statement was published to a third party (and that any such publication was privileged); a claim under South Carolina law for mental anguish is analogous to the tort of outrage (also known as intentional infliction of emotional distress) and is not a recoverable loss against the State or its political subdivision under the South Carolina Tort Claims Act ("SCTCA"), § 15-17-10, et seq.; and Plaintiff cannot establish a claim for false arrest or false imprisonment under South Carolina law.

#### (a) Statute of Limitations

To the extent that Plaintiffs' claims are brought pursuant to the SCTCA, such a cause of action must be filed within two years after the date the loss was or should have been discovered, where a claim was not filed within one year of the alleged incident.[4] A claim accrues under the SCTCA when the "the loss was or should have been discovered." S.C. Code Ann. § 15-78-110. A loss should be discovered when the circumstances would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist. Joubert v. South Carolina Dep't of Social Servs., 534 S.E.2d 1, 9 (S.C. Ct. App. 2000).

Although Plaintiff was arrested on April 21, 2007, he did not file this action until July 24, 2009, more than two years after his arrest. Plaintiff argues that he did not discover certain evidence until officers testified at his pre-trial hearing. There is, however, no dispute that Plaintiff knew or

---

[4] In South Carolina, the statute of limitations is generally three years for claims arising after April 5, 1988. See S.C. Code Ann. § 15-3-530.

should have known of his arrest and detention on April 21, 2007. He knew that he was initially questioned prior to a warrant being obtained on April 21, 2007, and that he was presented with a warrant on the charge of Fugitive from Justice later that day.

      (b)      False Arrest and False Imprisonment

To prevail on a claim of false imprisonment under South Carolina law, a plaintiff must show that "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." Law v. South Carolina Dept. of Corrs., 629 S.E.2d 642 (S.C.2006). A plaintiff may not maintain a cause of action for false imprisonment where he has been arrested by law enforcement pursuant to a valid arrest warrant. See Jones v. City of Columbia, 389 S.E.2d 662, 663 (S.C. 1990)("An action for false imprisonment cannot be maintained where one is arrested by lawful authority.").

Here, as discussed above, Plaintiff was arrested pursuant to a facially valid warrant on the charge of Fugitive from Justice. Thus, he has not shown that he was falsely arrested or imprisoned under South Carolina law. See Watkins v. Mobil Oil Corp., 313 S.E.2d 641 (S.C.Ct.App. 1984); James v. Fast Fare, Inc., 685 F. Supp. 565, 566-567 (D.S.C. 1988).

      (c)      Mental Anguish

Plaintiff fails to establish a claim under South Carolina law for mental anguish because he has not asserted any claim of physical injury. South Carolina law generally requires proof of physical injury for the recovery of mental anguish and emotional distress. See Phillips v. United States, 575 F.Supp. 1309, 1317 (D.S.C.1983)("'[E]motional distress is a proper element of tort damage as long as such distress encompasses some physical manifestation.'"(quoting Robertsen v. State Farm Mut. Auto. Ins. Co., 464 F.Supp. 876, 883 n. 9 (D.S.C.1979))); see also Kinard v. Augusta Sash & Door Co., 336 S.E.2d 465, 467 (S.C.1985)(adopting negligent infliction of

14

emotional distress to a bystander as a cause of action so long as the emotional distress is manifested by physical symptoms capable of objective diagnosis and established by expert testimony). Additionally, under the SCTCA, intentional infliction of emotional harm is not a recoverable loss against the State, a political subdivision thereof, or its employees. See S.C. Code Ann. § 15-78-30(f).

        (d)      <u>Defamation</u>

Plaintiff fails to establish a claim for defamation because he has not shown that a defamatory statement was published to any third party and because any communication was privileged. The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. <u>Holtzscheiter v. Thomson Newspapers, Inc.</u>, 506 S.E.2d 497, 501 (S.C. 1998). Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct. <u>Id.</u> If a communication is libelous, then the law presumes the defendant acted with common law malice. <u>Id.</u> Under South Carolina law, to state a cause of action for defamation, a plaintiff must show the existence of some message that (1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages. <u>Parker v. Evening Post Pub. Co.</u>, 452 S.E.2d 640, 644 (S.C. Ct. App. 1994), <u>cert. denied</u>, 516 U.S. 1172 (1996).

Here, Plaintiff fails to show that Defendant Corey spoke with anyone or made any comments to anyone regarding Plaintiff other than to the officers involved or the magistrate. Further, any such communication was subject to an absolute and/or qualified privilege. "The protection of privilege extends generally to remarks made in the prosecution of an inquiry regarding a crime which has been committed; and for the purpose of detecting and bringing the criminal to punishment." <u>Bell v. Bank</u>

of Abbeville, 38 S.E.2d 641, 643 (S.C. 1946). This privilege is qualified and the Plaintiff must show malice to overcome the privilege as a bar to the claim. See id. at 642. Here, Plaintiff has not shown malice. Additionally, publication to the magistrate to obtain a warrant is absolutely privileged as involving a judicial proceeding. See Richardson v. McGill, 255 S.E.2d 341 (S.C. 1979).

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 19) be **granted**, and that Plaintiff's motion for summary judgment (Doc. 21) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

August 13, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).